UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLD STAR FEED AND GRAIN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROLL-N-VIEW FARMS, LLC, BARTON, KIEFER & ASSOCIATES, LLC, EVAN BARTON AND NICHOLAS SCHMELZER,<br><br>Defendants. | Case No. 1:22-cv-937<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Gold Star Feed and Grain, LLC ("Gold Star"), by and through its undersigned counsel, for its Complaint against Roll-N-View Farms, LLC ("Roll-N-View"), Barton, Kiefer & Associates, LLC ("Barton Kiefer"), Evan Barton ("Mr. Barton") and Nicholas Schmelzer ("Mr. Schmelzer") (collectively, "Defendants"), alleges as follows:

## THE PARTIES

1. Gold Star is a Delaware limited liability company whose sole member is J.D. Heiskell Holdings, LLC, d/b/a J.D. Heiskell & Company ("J.D. Heiskell"). J.D. Heiskell is a California limited liability company. J.D. Heiskell's members are residents of California, Texas, Washington, and Nebraska.

2. Gold Star is engaged in the business of extending feed and commodities to farmers and agricultural businesses, including in the State of New York.

3. Upon information and belief, Roll-N-View is a New York limited liability company with its principal place of business in New York. Upon information and belief, Roll-N-View owns a farm in Nunda, New York, and its members are residents of New York.

4. Upon information and belief, Barton Kiefer is an Ohio limited liability company with its principal place of business in Ohio. Upon information and belief, Barton Kiefer's members are residents of Ohio. Barton Kiefer conducts business as Barton Kiefer Dairy Consulting.

5. Upon information and belief, Mr. Barton is a resident of Ohio, who, in connection with his role as a dairy consultant, provides consulting services in New York, and expressly provides consulting services to Roll-N-View in New York in connection with the dispute at issue in this litigation.

6. Upon information and belief, Mr. Schmelzer is a resident of Ohio, who, in connection with his role as a nutrition consultant, provides consulting services in New York, including to Roll-N-View in connection with the dispute at issue in this litigation.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there exists complete diversity of the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

8. Upon information and belief, this Court has personal jurisdiction over Roll-N-View, a New York limited liability company, due to its organization, place of business, and regularly conducting business (including business related to this dispute) in New York and due to its members' residencies in New York.

9. This Court has personal jurisdiction over Barton Kiefer, Mr. Barton and Mr. Schmelzer through: (i) their providing services and conducting business in New York with Roll-N-View; and (ii) their visiting Roll-N-View in New York to examine and consult on livestock feed.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## BACKGROUND FACTS

11. Plaintiff is in the business of, among other things, acquiring, producing and selling feed grain and supplements for livestock or dairy operations.

12. Roll-N-View has been a customer of Gold Star since at least February 1, 2022.

13. Beginning in February 2022, Roll-N-View applied to Gold Star to purchase dairy feed products (the "Products") for use in its dairy livestock operations.

14. For several months, the parties' course of conduct was as follows: Roll-N-View would submit an order for the Products to Gold Star. Gold Star would provide the Products to Roll-N-View and then issue an invoice to Roll-N-View for the Products.

15. From approximately February 8, 2022 to June 2022, Roll-N-View paid the invoices issued by Gold Star for the Products.

16. After June 2022, and continuing through October 2022, Roll-N-View continued to order Products from Gold Star.

17. Gold Star shipped the Products as ordered by Roll-N-View to Gold Star.

18. Roll-N-View accepted the Products shipped by Gold Star; Roll-N-View never returned any of the Products to Gold Star.

19. As per the parties' ordinary course of business, Gold Star issued invoices to Roll-N-View for the Products ordered after June 2022. True and correct copies of the invoices issued to Roll-N-View from June 2022 – October 2022 (which include payment terms) are attached hereto as **Exhibit 1**.

20. Roll-N-View has failed to pay Gold Star for the Products ordered and accepted by Roll-N-View as set forth in **Exhibit 1**.

21. As of December 2, 2022, the total amount due and owing by Roll-N-View to Gold Star is $513,478.60. *See* **Exhibit 1**.

22. Upon information and belief, since Roll-N-View became a customer of Gold Star, Roll-N-View has been using Barton Kiefer as a dairy consultant. Specifically, Roll-N-View worked with Mr. Schmelzer, a Barton Kiefer consultant.

23. Mr. Schmelzer would provide Gold Star with the formula for the feed Products that were to be shipped to Roll-N-View, and Gold Star would manufacture the Products for Roll-N-View based upon Mr. Schmelzer's formulas (the "Schmeltzer (Roll-N-View) Formulas").

24. Based upon Gold Star's review of the formula records, in June and July 2022, Mr. Schmelzer added tallow and other ingredients into the Schmelzer (Roll-N-View) Formulas, which Gold Star, based upon that instruction from Mr. Schmelzer, added to the Products.

25. Subsequently, on September 13, 2022, Mr. Schmelzer added 34.72 lbs per ton of palm fat to his Schmelzer (Roll-N-View) Formulas, which equates to three ounces of palm fat per cow/ per day, into the Products. Gold Star, based on Mr. Schmelzer's instruction, included this in the Products.

26. On September 27, 2022, Mr. Schmelzer increased the palm fat from 34.72 lbs per ton of palm fat to 95.60 lbs per ton to his Schmelzer (Roll-N-View) Formulas, which equates to moving from three to eight ounces of palm fat per cow/per day into the Products. Gold Star, based on Mr. Schmelzer's instruction, included this in the Products.

4861-3864-8129.6

27. The next day, on September 28, 2022, Mr. Schmelzer instructed Gold Star to cease adding any of the palm fat that he instructed Gold Star to include previously on September 13th and September 27th. Gold Star followed Mr. Schmelzer's instructions.

28. From September 28, 2022 onwards, Gold Star was told that Mr. Schmelzer advised Roll-N-View to add palm fat into the Products by hand at its dairy.

29. Nearly eight months after Gold Star began providing the Products to Roll-N-View, on October 18, 2022, Roll-N-View, for the first time, expressed concerns to Gold Star that there was an issue with the Products, and more specifically, the buffer product used by Gold Star in the production of its Products.

30. On October 21, 2022, Todd Galton (a principal of Roll-N-View) followed up with Gold Star and indicated that his dairy was encountering a low butter fat problem and asked to meet with Gold Star to discuss the issue.

31. On October 26, 2022, a representative of Gold Star met with Todd Galton, Cooper Galton, and Mr. Schmelzer at Roll-N-View's dairy farm in New York.

32. During this meeting, Gold Star and Mr. Schmelzer reviewed with Roll-N-View Mr. Schmelzer's process for providing Gold Star the Schmelzer's (Roll-N-View) Formula to be manufactured by Gold Star and then provided to Roll-N-View.

33. Gold Star confirmed that it correctly entered the Schmelzer (Roll-N-View) Formulas into an ingredient measuring software, and neither Mr. Todd Galton nor Mr. Schmelzer disputed this confirmation.

34. Gold Star also explained to Roll-N-View and Mr. Schmelzer how the Schmelzer (Roll-N-View) Formulas were exported from the ingredient measuring software to the production system and how the production system then makes the Products.

35. Gold Star confirmed that it manufactured the Products for Roll-N-View using the Schmelzer (Roll-N-View) Formulas and how the feed Products expressly and specifically met Schmelzer (Roll-N-View) Formulas specifications.

36. Following that in-person meeting, Gold Star took extra steps to confirm that its production system was making the feed according to the Schmelzer (Roll-N-View) Formulas Gold Star did not find any indication that the production system had any issues.

37. Gold Star also took steps to determine whether certain other allegations made by Roll-N-View and Mr. Schmelzer were correct. Specifically, Mr. Schmelzer claimed that Gold Star's buffer product was South African product, not product from the United States. However, Gold Star did not have the South African product at its facility and, as such, this claim was factually inaccurate. Mr. Schmelzer's allegations were false.

38. Mr. Schmelzer also informed Gold Star that the palm fat supplied by Gold Star was rancid. Gold Star again followed up with its palm fat supplier and confirmed that its fat was not rancid, that they clean out the fat auger twice a year, and that the clean-out had occurred most recently in September 2022, which would have alerted Gold Star to any product issue. Gold Star provided this information to Roll-N-View and Mr. Schmelzer.

39. As part of its discussions with Roll-N-View and Mr. Schmelzer, Gold Star reviewed how Mr. Schmelzer had intentionally made revisions to the Schmelzer (Roll-N-View) Formulas from June until October 2022, including adding tallow and other ingredients beginning in the summer of 2022. Mr. Schmelzer also made changes in September 2022 to the formulas. For example, on September 13, 2022, Mr. Schmelzer decided to add only a small amount of palm fat into the Schmelzer (Roll-N-View) Formulas sent to Gold Star. Mr. Schmelzer then added additional palm fat for approximately one day on September 27, 2022. Subsequently, on

September 28, 2022, Mr. Schmelzer reversed both his instructions from September 13 and September 27, 2022 and instructed Gold Star to stop adding any palm fat to Schmelzer (Roll-N-View) Formulas. From September 28, 2022 going forward, Roll-N-View and Mr. Schmelzer added the palm fat after Gold Star delivered the Products to the Roll-N-View dairy.

40. Despite the fact that Gold Star's Products shipped to Roll-N-View were of good quality and met the specifications of the Schmelzer (Roll-N-View) Formulas, and despite informing Roll-N-View and Mr. Schmelzer of this information, Gold Star received correspondence from Mr. Barton at Barton Kiefer dated November 22, 2022 making various false allegations regarding Gold Star's Products.

41. In its November 22, 2022 correspondence Mr. Barton of Barton Kiefer stated that he had been called to the Roll-N-View dairy farm by Mr. Schmelzer in late spring 2022 to review cattle nutrition.

42. Mr. Barton falsely alleged that Gold Star "was manipulating formulas and substituting ingredients or providing subpar ingredient quality," despite a Barton Kiefer representative attending the October 26, 2022 meeting with Gold Star.  Barton Kiefer was also aware of the results and outcome of that meeting, which confirmed Gold Star's Products were properly and appropriately manufactured.

43. Mr. Barton stated in the November 22, 2022 correspondence that Barton Kiefer informed Gold Star that it instructed Roll-N-View to source its entire mill mix from a different feed supplier, thus admitting that it expressly and intentionally instructed Roll-N-Farm to move its business away from Gold Star.

7

44. As a further result of Barton Kiefer and Mr. Barton's false statements and instructions, on November 22, 2022, Roll-N-View notified Gold Star via email that it "will be suspending payments to Gold Star."

45. As of the date of filing, Roll-N-View has failed to make payment to Gold Star, despite accepting the Products and reaping their benefits.

## FIRST CAUSE OF ACTION

(BREACH OF CONTRACT---ROLL-N-VIEW)

46. J.D. Heiskell hereby incorporates by this reference paragraphs 1 through and 45 of this Complaint.

47. A valid and enforceable contract exists between Roll-N-View and Gold Star regarding the purchase of Gold Star's Products for Roll-N-View's dairy operations, as evidenced by Roll-N-View's order request to Gold Star for Products, Gold Star's acceptance of the order, the providing of Products to Roll-N-View, Roll-N-View's agreement to pay for the Products, and the issuance of an Invoice by Gold Star to Roll-N-View.

48. Gold Star performed pursuant to the contractual agreement by manufacturing the Products per the Schmelzer (Roll-N-View) Formulas and delivering the Products to Roll-N-View.

49. Roll-N-View materially breached its obligations under the contract by failing to pay certain sums due and owing to Gold Star, as highlighted by the unpaid invoices in **Exhibit 1**.

50. Roll-N-View's material breaches under the contract, as set forth above, have directly and proximately caused damages to Gold Star in the amount of $513,478.60.

51. As a result of these material breaches, Gold Star requests that a judgment be entered against Roll-N-View in favor of Gold Star in an amount no less than $513,478.60.

## SECOND CAUSE OF ACTION

(BREACH OF IMPLIED CONTRACT-IN-FACT---ROLL-N-VIEW)

52. Gold Star hereby realleges and incorporates herein by this reference paragraphs 1 through 45 of this Complaint.

53. A valid implied-in-fact contract exists between Gold Star and Roll-N-View as evidenced by the parties' conduct.

54. Roll-N-View has been a customer of Gold Star since at least February 2022 to purchase Products for use in its dairy operations. For several months, the parties established a course of conduct that entailed the following: Roll-N-View would submit an order for the Products to Gold Star. Gold Star would then provide the Products to Roll-N-View and subsequently issue an invoice to Roll-N-View for the Products, which Roll-N-View paid from February 8, 2022 to June 2022.

55. After June 2022, and continuing through October 2022, Roll-N-View continued to order Products from Gold Star, and Gold Star fulfilled its performance obligations under the agreement by delivering the Products as ordered by Roll-N-View to Gold Star.

56. As per the parties' ordinary course of business, Gold Star issued invoices to Roll-N-View for the Products ordered after June 2022; however, despite accepting the Products shipped by Gold Star, Roll-N-View failed to pay the invoices and thereby breached its agreement with Gold Star. *See* **Exhibit 1**.

57. As a result of Roll-N-View's breach, as of December 2, 2022, Gold Star has suffered damages of, at a minimum, $513,478.60. *See* **Exhibit 1**.

## THIRD CAUSE OF ACTION

(U<small>NJUST</small> E<small>NRICHMENT</small>/Q<small>UANTUM</small> M<small>ERUIT</small>---R<small>OLL</small>-N-V<small>IEW</small>)

(In the alternative to Breach of Contract and Implied Contract)

58. Gold Star hereby realleges and incorporates herein by this reference paragraphs 1 through 45 of this Complaint.

59. Roll-N-View ordered Products from Gold Star as more fully set forth in **Exhibit 1**.

60. Upon Roll-N-View's request, Gold Star delivered the Products using the Schmelzer (Roll-N-View) Formulas to Roll-N-View, thereby performing its services and doing so in good faith.

61. Roll-N-View accepted the Products by Gold Star upon delivery and used said Products as feed for its dairy livestock.

62. Since June 2022, Roll-N-View has inequitably retained the benefit of the Products without paying Gold Star for the value of the Products provided.

63. As a business engaged in extending feed and commodities to farmers and agricultural businesses, Gold Star expected to be compensated for its services rendered to Roll-N-View. Roll-N-View previously paid Gold Star for invoices issued for Products ordered by Roll-N-View.

64. The fair and reasonable value of the Products provided by Gold Star is not less than $513,478.60, plus additional and accruing interest. *See* **Exhibit 1**.

65. Roll-N-View, in justice and fairness, ought to pay Gold Star for the benefit provided to Roll-N-View pursuant to the unpaid invoices. *See* **Exhibit 1**.

66. As a result of Roll-N-View's actions, Gold Star has suffered harm, and continues to suffer harm, while Roll-N-View has been unjustly enriched, in an amount to be determined at

trial, but at a minimum in an outstanding amount of $513,478.60, with additional interest accruing, as well as attorneys' fees, costs, and postjudgment interest as permitted by law.

## FOURTH CAUSE OF ACTION

(PROMISSORY ESTOPPEL---ROLL-N-VIEW)

67. Gold Star hereby realleges and incorporates herein by this reference paragraphs 1 through and including 45 of this Complaint.

68. Roll-N-View, as a preexisting customer of Gold Star, is aware of how Gold Star's transactions operate with its customers for livestock feed.

69. Roll-N-View knew that upon submitting an order—containing formulation specifications from its nutritionist—for the Products and receiving them, Gold Star expected to be compensated.

70. Gold Star reasonably and foreseeably relied on the promise of payment from Roll-N-View and delivered the Products to Roll-N-View with the expectation that payment would follow.

71. As a result of Gold Star's reliance on the promise, Gold Star was injured and is still owed at a minimum an outstanding amount of $513,478.60, with additional interest, as well as attorneys' fees, costs, and postjudgment interest as permitted by law.

## FIFTH CAUSE OF ACTION

(TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS---BARTON KIEFER, MR. SCHMELZER AND MR. BARTON)

72. Gold Star hereby realleges and incorporates by this reference paragraphs 1 through and including 45 of this Complaint.

73. Roll-N-View has been a customer of Gold Star since February 2022. Consequently, a business relationship between Gold Star and Roll-N-View exists.

74. Barton Kiefer, Mr. Schmelzer and Mr. Barton knew of Gold Star and Roll-N-View's relationship and actively met with both Roll-N-View and Gold Star in connection with that business relationship.

75. Moreover, Barton Kiefer, Mr. Schmelzer and Mr. Barton knew Gold Star's role was to manufacture the Schmelzer (Roll-N-View) Formulas into the Products supplied to Roll-N-View.

76. Barton Kiefer, Mr. Schmelzer and Mr. Barton intentionally interfered with Gold Star and Roll-N-View's relationship when it inaccurately informed Roll-N-View that there was a problem with the Products.

77. Barton Kiefer, Mr. Schmelzer and Mr. Barton further interfered with Gold Star's business relationship with Roll-N-View when the low butter fat issue arose on the farm at Roll-N-View. At that time, Barton Kiefer, Mr. Schmelzer and Mr. Barton advised Roll-N-View that Gold Star was to blame despite the fact that Gold Star was using the Schmelzer (Roll-N-View) Formulas. Mr. Schmelzer changed the Schmelzer (Roll-N-View) Formulas throughout 2022, including in June/July of 2022 when he added tallow and other ingredients, and from there, continued to change the Schmelzer (Roll-N-View) Formulas throughout August through October 2022. Despite unrefuted evidence that Gold Star had correctly manufactured and provided Products to Roll-N-View, Barton Kiefer, Mr. Schmelzer and Mr. Barton continue to falsely blame Gold Star for concerns that Roll-N-View had around the butter fat content in its milk and made false and inaccurate comments about Gold Star's ingredients.

78. Barton Kiefer, Mr. Schmelzer and Mr. Barton further intentionally interfered with Gold Star and Roll-N-View's relationship when it instructed Roll-N-View to source its "entire mill mix from a different feed provider" based on information it knew to be false and inaccurate.

79. By taking these actions, Barton Kiefer, Mr. Schmelzer and Mr. Barton therefore acted with the sole purpose of harming Gold Star or, failing that level of malice, used dishonest, unfair or improper means.

80. The relationship between Gold Star and Roll-N-View has been impacted by Barton Kiefer, Mr. Schmelzer and Mr. Barton's actions. As a direct result of Barton Kiefer, Mr. Schmelzer and Mr. Barton's actions, Roll-N-View has refused to pay Gold Star for the Products it received and has ceased doing business with Gold Star. Had Barton Kiefer, Mr. Schmelzer and Mr. Barton not tortiously interfered with Gold Star's relationship with Roll-N-View, Roll-N-View would have paid for the outstanding Products and would have continued ordering Products from Gold Star.

81. Thus, as a result of Barton Kiefer, Mr. Schmelzer and Mr. Barton's actions, Gold Star has been harmed in the amount of at least $513,478.60, with interest accruing, plus lost future business, plus attorneys' fees, costs, and postjudgment interest as permitted by law.

## SIXTH CAUSE OF ACTION

(DEFAMATION---BARTON KIEFER AND MR. BARTON)

82. Gold Star hereby realleges and incorporates by this reference paragraphs 1 through and including 45 of this Complaint.

83. Barton Kiefer and Mr. Barton made the statement, "I knew Goldstar (sic) feed was manipulating formulas and substituting ingredients or providing subpar ingredient quality."

Upon information and belief, Mr. Barton and Barton Kiefer made this statement to Todd Galton, Cooper Galton, and others at Roll-N-View.

84. The above-mentioned statement is false.

85. Barton Kiefer and Mr. Barton's statement that Gold Star was manipulating formulas and substituting ingredients or providing subpar ingredient quality was communicated and published to Gold Star's customer, Roll-N-View.

86. Barton Kiefer was informed that Gold Star's Products were, in fact, made pursuant to the Schmelzer (Roll-N-View) Formulas.

87. Therefore, Barton Kiefer and Mr. Barton acted, at the very least, with negligence in publishing or making the statement to Roll-N-View. The statements were made with at least a negligible level of intent.

88. Roll-N-View has now failed to pay monies due and owing to Gold Star and has ceased doing business with Gold Star as a result of Barton Kiefer's false statement, thereby causing damage to Gold Star.

**WHEREFORE**, Gold Star prays that the Court:

A. On the First Cause of Action, enter judgment in favor of Gold Star against Roll-N-View in an amount to be determined at trial, but at a minimum in an outstanding amount of $513,478.60, with interest accruing, plus attorneys' fees, costs, prejudgment interest and postjudgment interest as permitted by law;

B. On the Second Cause of Action, enter judgment in favor of Gold Star against Barton Kiefer in an amount to be determined at trial, but at a minimum in an outstanding amount of $513,478.60, with interest accruing, plus attorneys' fees, costs, prejudgment interest and postjudgment interest as permitted by law;

15

C. On the Third Cause of Action, enter judgment in favor of Gold Star against Roll-N-View in an amount to be determined at trial, but at a minimum in an outstanding amount of $513,478.60, with interest accruing, plus attorneys' fees, costs, prejudgment interest and postjudgment interest as permitted by law;

D. On the Fourth Cause of Action, enter judgment in favor of Gold Star against Barton Kiefer in an amount to be determined at trial, but at a minimum in an outstanding amount of $513,478.60, with interest accruing, plus attorneys' fees, costs, prejudgment interest and postjudgment interest as permitted by law;

D. On the Fifth Cause of Action, enter judgment in favor of Gold Star against Barton Kiefer, Mr. Schmelzer, and Mr. Barton in an amount to be determine at trial, but at a minimum in an outstanding amount of $513,478.60, with interest accruing, and lost business from Roll-N-View, plus attorneys' fees, costs, prejudgment interest and postjudgment interest as permitted by law;

E. On the Sixth Cause of Action, enter judgment in favor of Gold Star against Barton Kiefer and Mr. Barton in an amount to be determined at trial, but at a minimum in an outstanding amount of $513,478.60, with interest accruing, and lost business from Roll-N-View, plus attorneys' fees, costs, prejudgment interest and postjudgment interest as permitted by law; and

F. Grant Gold Star such other and further relief that the Court may deem just and proper.

4861-3864-8129.6

Dated this 2nd day of December, 2022.

        GOLD STAR FEED AND GRAIN, LLC,
        Plaintiff

        *Respectfully submitted*,
        */s/ **Robert A. Jaffe***
        Robert A. Jaffe
        (NY ATTORNEY NO. 1549377)
        Victoria H. Buter
        (Nebraska Bar No. 23841)
        (*Pro hac vice application forthcoming*)
        **KUTAK ROCK LLP**
        45 Rockefeller Center-Suite 2000
        New York, NY  10111
        Tel.: (212) 332-1120 / (202) 828-2400
        Fax: (646) 747-8234
        Robert.Jaffe@KutakRock.com
        Vicki.buter@kutakrock.com

4861-3864-8129.6